## GREAT LAKES HOTEL CO. v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Seventh Circuit.
December 20, 1928.

Petition for Rehearing withdrawn February 18, 1929.

No. 4041.

Edwin H. Cassels, of Chicago, Ill., for petitioner.

John V. Groner, of Norfolk, Va., for respondent.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Through this appeal petitioner seeks to set aside the decision of the Board of Tax Ap-

peals whereby it was adjudged to be indebted to the United States for income and profit taxes for the year 1920 in the sum of $28,707.30. The taxpayer's sole contention is that it was affiliated with H. L. Stevens & Co. and four other companies in the year 1920, within the meaning of section 240 of the Revenue Act of 1918 (40 Stat. 1081), and it is therefore entitled to offset its profits by the losses sustained by these other companies.

Even if not affiliated with *all* these companies, it contends that it was affiliated with the Olmsted Hotel Company and this affiliation necessitates a substantial reduction in its taxes.

Petitioner accepts the findings made by the Board of Appeals, but excepts to the conclusions which a majority of the board (six members dissented) drew from the findings. This conclusion was: "On consideration of all the facts presented we are of the opinion that petitioner was not affiliated with H. L. Stevens & Co. or with any of its alleged affiliated corporations, during 1920."

Respondent argues that this is a finding of fact, and, inasmuch as petitioner has not brought up the evidence, it must be accepted by this court as a verity. While we agree with the respondent that it is immaterial whether a finding of fact appears under the heading "conclusions of law," we are convinced that the above quotation from the board's findings of fact and conclusions of law is, in this instance, a conclusion of law— not a finding of fact.

The specific findings of fact which the board made show clearly that the quoted statement was nothing more nor less than the board's conclusion drawn from such detailed facts. Let us assume, to demonstrate the point, a simpler, but similar, situation. Instead of six corporations, assume there were two. Instead of a group of majority stockholders, there was but one. Instead of holding 71 per cent. or 78 per cent. of the stock, assume his ownership of the stock of both corporations exceed 99 per cent. Then assume further that these facts were all separately and specifically found, and also, as here, the general statement appeared that the two corporations were not affiliated within the meaning of section 240 of the Revenue Act. That the latter statement was a conclusion of the board, not a finding of fact, no one would question.

Petitioner, therefore, may present his assignment of error which challenges the correctness of this conclusion.

The findings cover some 15 closely printed pages and describe in detail the corporate character and the activities of each of the so-called affiliated companies. A detailed statement, showing the names of each stockholder and the number of shares each stockholder holds in each company, also appears.

H. L. Stevens & Co., with H. L. Stevens as its president, is a Maine corporation whose business is to design and supervise the construction of hotels in the United States and Canada. It carries a staff of experienced architects, engineers, construction and equipment men, hotel operators, and experts in hotel operation and financing.

The Olmsted Hotel Company, one of the so-called affiliated corporations, was organized in Ohio by the Stevens Company, and for the purpose of operating the Winton Hotel at Cleveland, Ohio. The Stevens Company took a lease of the hotel, but transferred the local management to the Olmsted Hotel Company.

The Lake Erie Hotel Company was also an Ohio company organized by the Stevens Company to operate the hotel at Ashtabula. The building and the equipment were designed by the Stevens Company in the same way as the petitioner which also was an Ohio corporation organized by the Stevens Company for operating the Olmsted Hotel at Cleveland.

The Olmsted Hotel was designed, operated, and equipped by, and under the supervision of, Stevens & Co. The petitioner holds the lease and conducts the Olmsted Hotel, although the hotel proper was first leased to one David Olmsted, with an understanding that it was to be assigned by him to a corporation to be formed by the Stevens Company. Petitioner was then organized to take over this lease, and Olmsted assigned the lease to the petitioner. The money for the purchase of all the stock originally issued was furnished by the Stevens Company, but the stock was issued in the name of Olmsted, who indorsed the certificates in blank. The minority stockholders in all of these companies were individuals who were acquainted with, or friendly to, the officers of the Stevens Company or to Olmsted.

The Valley Farm Company was a Wisconsin corporation, organized by the Stevens Company for the purpose of organizing and operating a large fruit and stock farm in Wisconsin, the intention being to have said farm furnish the dairy products, the fruit, and certain vegetables for said hotels.

The Metropolitan Mortgage Company was a Delaware corporation, organized for the purpose of financing the Stevens Company hotels and properties. All of the officers and principal employees of the Stevens Company and the other affiliated companies consti-

tuted what is referred to by the parties as the Stevens organization. The president of the Stevens Company was the head of the organization.

Each of the so-called affiliated companies reported through its managing officers daily to Stevens on blanks furnished by the Stevens Company. A monthly magazine was sent to all the members of the organization and was used as an advertising medium. Weekly and monthly bulletins, prepared by Stevens Company, were sent out to all members of the Stevens organization. The annual reports of all the companies were kept at all times in a single record book. All the companies had the same fiscal year. The system of accounting of all the affiliated companies was devised and put into operation and continuously supervised by the Stevens Company. All leases, all important contracts, or contracts for concessions, were submitted to the Stevens Company for approval. The same general counsel acted for all companies. The Stevens Company provided a fund for loaning money to employees of all the affiliated companies upon the same terms. Bonus or saving funds were provided for the Stevens organization, available to all employees of all affiliated companies. All parties seemed to agree that the legal title to the stock was in the Stevens associates, and the equitable title thereto rested in the individuals of the Stevens organization.

In 1920, 71 per cent. of the stock of the Great Lakes Hotel Company was owned by the Stevens Company, or by members of the Stevens organization. Fifty per cent. of such stock belonged to H. L. Stevens & Co. Seventy-eight per cent. of the Olmsted Hotel Company was owned by H. L. Stevens & Co., or by the members of the H. L. Stevens organization, and 71 per cent. of the Lake Erie Hotel Company was similarly owned. Seventy-one per cent. of the Metropolitan Mortgage Company was similarly owned. Of the stock of the Great Lakes Hotel Company, 95.5 was similarly owned.

Respecting the affiliation of the petitioner and the Olmsted Hotel Company, it appeared that 95.9 per cent. of the stock of the Great Lakes Hotel Company and 90.7 per cent. of the Olmsted Hotel Company was held by the same interests.

Section 240 reads as follows:

"(a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner, with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and title III, and the taxes thereunder shall be computed and determined upon the basis of such return. * * *

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *

"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated.

"(1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or

"(2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

The Treasury Department Regulations, articles 631 and 633 of Regulation 45, read:

"*The Underlying Necessity for Consolidated Returns.*—The provision of the statute requiring affiliated corporations to file consolidated returns is based upon the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the invested capital and net income of the branch form a part of the invested capital and net income of the entire organization. Where such branches or units of a business are owned and controlled through the medium of separate corporations, it is necessary to require a consolidated return in order that the invested capital and net income of the *entire group* may be accurately determined. Otherwise, opportunity would be afforded for the evasion of taxation by the shifting of income through price fixing, charges for services and other means by which income could be arbitrarily assigned to one or another unit of the group. In other cases without a consolidated return excessive taxation might be imposed as a result of purely artificial conditions existing between corporations within a controlled group.

"Corporations will be deemed to be af-

filiated (a) when one domestic corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (b) when substantially all the stock of two or more domestic corporations is owned or controlled by the same interests. The words 'substantially all the stock' cannot be interpreted as meaning any particular· percentage but must be construed according to the *facts of the particular case*. The owning or controlling of 95 per cent. or more of the outstanding voting capital stock (not including stock in the treasury) at the beginning of and during the taxable year ,will be deemed to constitute an affiliation within the meaning of the statute. Consolidated returns may, however, be required even though the stock ownership is less than 95 per cent. *When the stock ownership or, control is less than 95 per cent., but in excess of 50 per cent.,* a full· disclosure of affiliations should be made, showing *all pertinent facts,* including the stock owned or controlled in each subsidiary or affiliated corporation *and* the percentage of such stock owned or controlled to the total stock outstanding. Such statements should preferably be made in advance of filing the return, with a request for instructions as to whether a consolidated return should be made. In any event such a statement should be filed as part of the return. The words 'the same interests' shall be deemed to mean the same individual or partnership or the same individuals or partnerships, but when the stock of two or more corporations is owned or controlled by two or more individuals or by two or more partnerships, a consolidated return is not required unless the percentage of stock held by each individual or each partnership is substantially the same in each of the affiliated corporations."

The determination of this appeal turns upon the construction that is given to the terms "substantially all of the stock" "controlled through closely affiliated interests" and "owned or controlled by the same interests," as these expressions are used in section 240 (b) above quoted.

Without going into an extensive discussion, we will merely state our conclusions, which are:

(a) The word "controlled," as used in this section, is more comprehensive than the word "owned."

(b) The "same interests" and "closely affiliated interests" describe the same group, the latter expression enlarging what might otherwise be embraced in the term "same interests." Both expressions were intended to include more than "same owner." An ex-

amination of the facts in each case is necessary to ascertain who, among the stockholders, comprise the group thus designated.

(c) "Substantially all the stock" is a lax, indefinite expression, which, under the rulings of the board, is equivalent to "a large majority." Its limitations cannot be defined with exactness or certainty. When the Commissioner promulgated article 633 of its Regulations 45 and announced that ownership of more than 51 per cent. of the capital stock of the corporation might, under certain circumstances, be "substantially · all of the stock," he was exercising legislative rather than administrative powers and acting beyond his authority.

Applying these conclusions to the facts in the case before us, we have no hesitancy in holding that the majority stockholders in each of the six corporations comprise a group which comes within the statutory designation of "closely affiliated interests." They were guided in their action by a common interest and their common object was attained by all corporations pursuing the same methods through the same agencies. In addition to owning more than one-half. of the stock, these "closely affiliated interests" *controlled* other stock. For example, there was an understanding that if any minority stockholder wished to sell his stock, it should first be offered for sale to H. L. Stevens & Co., and as a matter of practice such minority stockholders offered their stock to H. L. Stevens & Co., and this company actually purchased the stock thus offered. In addition the various minority stockholders executed proxies to the "closely affiliated interests" by the terms of which the latter were authorized to vote for, and act for, the former. A large group of minority stockholders made sworn statements that "at the time they purchased their stock * * * they had full confidence in the rectitude and business ability of H. L. Stevens and that· they anticipated that he would continue as president of the Stevens Co. and that if they desired to sell their stock it was their understanding they should first offer it for sale to H. L. Stevens & Co."

Upon this record, we are satisfied that such stock was controlled by the so-called closely affiliated interests and that such stock, added to the stock owned by the group· that comprised the closely affiliated interests, constituted substantially all of the stock of these corporations.

It follows from what has been said that petitioners and H. L. Stevens & Co., the Metropolitan Mortgage Company, Olmsted Hotel Company, the Lake Erie Hotel Company, and Valley Farm were affiliated domestic

corporations within the meaning of section 240 (b), and were required to make a consolidated return of their net income, and should have their taxes computed and determined upon the basis of such consolidated return.

The order appealed from is reversed, with directions to proceed in accordance with the views expressed in this opinion.