## JOS. DENUNZIO FRUIT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5703.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1931.

H. J. Graham, of Louisville, Ky. (Theodore B. Benson, of Washington, D. C., on the brief) for petitioner.

S. Dee Hanson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Percy S.

Crewe, all of Washington, D. C., on the brief), for respondent.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

Petition by Jos. Denunzio Fruit Company to review a decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing, on redetermination, a deficiency in income and excess profits taxes against it for the year 1921 in the sum of $49.43. Petitioner, a Kentucky corporation, having its office and principal place of business in Louisville, had, prior to 1920, been engaged in buying and selling citrous fruits. It had an arrangement with one Spivey of Clearwater, Fla., to purchase and pack the fruits required to supply its trade. Spivey died in 1920.

Desiring to continue the Florida business, Mark Denunzio, Charles Scholtz, and Fred Scholtz, the officers, directors, and stockholders of petitioner, in July, 1920, organized the Spivey Packing Company, also a Kentucky corporation, having its home office in the offices of petitioner at Louisville but operating at Clearwater, Fla. The Spivey Company was capitalized at $30,000 represented by 300 shares of common stock having full voting rights. Of this stock petitioner owned 241 shares, Mark Denunzio 3 shares, Charles Scholtz 3 shares, Fred Scholtz 3 shares, and S. J. Meares, of Clearwater, Fla., 50 shares. Charles Scholtz was president, Mark Denunzio, vice president, and Fred Scholtz, secretary and treasurer, and the three were directors, of each corporation.

Meares was unable to pay for all of his 50 shares of stock, and, notwithstanding a general oral agreement that the stockholders in the Spivey Company would not sell to outside parties, he, with the consent of the other stockholders, sold one-half of his stock to his brother E. T. Meares. During the life of the Spivey Company, S. J. Meares attended at least one and probably more of the meetings of its directors and stockholders at Louisville at petitioner's expense.

Because of his previous experience in the business under Spivey, S. J. Meares was made general manager of the Spivey Company at a salary of $1,500 per annum. The Spivey Company bought from Mrs. Spivey the packing plant originally operated by Spivey at Clearwater, and under the management of Meares continued to buy and ship fruit therefrom until about July, 1921, when it failed. Meares would purchase fruit under the general supervision and direction of petitioner and would pack and ship to petitioner under its own brands and trademarks, and generally at cost, such portion of the purchases as petitioner required. The remainder would be sold under the general direction of petitioner to other parties. For the year ending June 30, 1921, the total sales of the Spivey Company were $238,632.81 of which amount $108,192.35 was purchased by petitioner.

Petitioner during the operations of the Spivey Company advanced to it the sum of $67,052.68. The Spivey Company, on account of the decline in prices, suffered a net loss of $15,953.41 for the year ending June 30, 1921. Thereupon petitioner sold all the assets of the Spivey Company for about $15,000 and paid all its liabilities. Petitioner received nothing by way of distribution upon its 241 shares of Spivey stock. It is made clear by the testimony of Denunzio and the Scholtz brothers that there was no limitation upon the right of the Meares brothers to vote or otherwise to control their stock as they pleased. It is equally as clear that, while there was a general understanding that a stockholder should not sell to an outsider except by consent, yet there was no requirement compelling petitioner or any of its stockholders to buy.

The only issue before the Board of Tax Appeals was, whether petitioner and the Spivey Company were, for the calendar year 1921, affiliated within the meaning of section 240 (c) of the Revenue Act of 1921, 42 Stat. 227, 260 (26 USCA § 993 (c). It might reasonably be said that through the affiliated interests of Denunzio and the Scholtz brothers petitioner controlled the business of the Spivey Company, but since the case of United States v. Cleveland, P. & E. R. Co., 42 F.(2d) 413, 418 (C. C. A. 6), business control is no longer determinative. We there said: "Congress made determinative not actual control of the related companies, or of the subsidiary by the parent company, but the substantial ownership or control of their stock, or of the stock of the subsidiary by the parent company."

By this test the two companies were not affiliated. Petitioner owned 80⅓ per cent. of the Spivey Company stock, Denunzio and Scholtz brothers owned 3 per cent. Petitioner through its directors and stockholders controlled only 83⅓ per cent. Put in another way, Denunzio and Scholtz brothers,

representing "the same interests" in both corporations, controlled all of petitioner's stock, but only 83⅓ per cent. of the Spivey Company stock. We do not think 83⅓ per cent. is "substantially all." U. S. v. Cleveland, P. & E. R. Co., supra.

We conclude therefore that upon the record there appears no sufficient reason for saying that the Board was unjustified in holding that petitioner and the Spivey Company were not affiliated within the meaning of the statute in question.

Affirmed.