### HOWES BROS. HIDE CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 2533.

Circuit Court of Appeals, First Circuit.

May 16, 1931.

Robert A. Littleton, of Washington, D. C. (Mason, Spalding & McAtee, of Washington, D. C., on the brief), for petitioners for review.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., F. Edward Mitchell, Sp. Asst. to Atty. Gen., and C. M. Charest, General Counsel, and Percy S. Crewe, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This appeal from the Board of Tax Appeals presents the question as to whether the Howes Brothers Company, the Howes Brothers Hide Company, and the Huntington Shoe & Leather Company may (all or any two of them) be affiliated within the meaning of the Revenue Act of 1918, c. 18, § 240 (b), 40 Stat. 1057, 1082, which reads:

"For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

The Howes Brothers Company is a Massachusetts corporation, managed and dominated by the five Howes brothers. Its authorized capital stock is $3,000,000: First preferred, 7 per cent., series A, $600,000; series B, 6 per cent., $900,000; second preferred, $350,000; common, $1,150,000. The first preferred stocks are callable at specified prices on 90 days' notice. The Howes brothers own all the common and second preferred, and 37 shares of the first preferred. All classes of stock have like voting power; the five Howes brothers have thus a slight voting majority.

The hide company is essentially a holding company, with only common stock, 1,995 shares, all held by the five Howes brothers. These two concerns have a common office

in Summer street, Boston, and with the same employees.

The Huntington Shoe & Leather Company has its principal office and place of business in Huntington, Ind. It had three classes of stock—first preferred, second preferred, and common. From and after April 22, 1918, only the common had voting rights. During 1918 and 1920, the common stock was held as follows:

| | 1918 | 1920 |
|---|---|---|
| Eldora W. Howes | 75 | 75 |
| George C. Howes | 105 | 105 |
| Henry S. Howes | | 10 |
| E. P. Melson | 250 | 125 |
| C. A. Sawyer, Jr. | 680 | 680 |
| H. M. Webster | | 125 |
| Edna M. Webster | 40 | 40 |
| Clarence A. Howell | 25 | 25 |
| Helen B. Howes | 10 | |
| Other stockholders | 15 | 15 |
| | 1,200 | 1,200 |

"The above stockholders bore the following relationship to the five Howes brothers: Eldora Howes, wife of George C. Howes; George C. and Henry Howes, two of the five Howes brothers; E. P. Melson, father of Edna Webster; C. A. Sawyer, Jr., nephew of Ernest G. Howes; H. M. Webster, brother-in-law of George C. Howes; Edna Webster, wife of H. M. Webster; Clarence A. Howell, employee of Howes Brothers Company. The 680 shares of stock standing in the name of C. A. Sawyer, Jr., was purchased with funds advanced by the Hide Company, the advance being made either to Sawyer, G. C. Howes or both. Eldora Howes held 40 shares of first preferred, series A, in Howes Brothers Company, and Clarence A. Howell owns 100 shares of the same stock, while C. A. Sawyer, Jr., owned 50 shares of the Howes Brothers Company's first preferred, series B, stock.

"Since its organization, the Huntington Shoe and Leather Company has been financed by the petitioners. At the close of 1918 the Huntington Company owed Howes Brothers Company approximately $325,000 for leather purchased. At the close of 1920 the Huntington Company had received advances from Howes Brothers Company of $375,000, and from the Hide Company of $150,000, in addition to approximately $325,000 of leather from Howes Brothers Company. None of this indebtedness had been liquidated by the Huntington Company up to 1920, and only about $100,000 since then."

The financial status of the three concerns is shown as follows:

| | Dec. 31, 1917 | Dec. 31, 1918 | Dec. 31, 1919 | Dec. 31, 1920 |
|---|---|---|---|---|
| Howes Bros. Co. Surplus | $957,680.09 | $1,045,399.29 | $1,281,529.08 | $1,413,099.67 |
| Howes Bros. Hide Co. surplus | 196,620.95 | 359,618.34 | 540,576.44 | 498,250.46 |
| Huntington Shoe & Leather Co. (deficit) | (813.60) | (192,385.80) | (195,809.61) | (341,591.86) |

"The balance sheets also show that the assets of the Howes Brothers Company consisted almost entirely of cash, accounts receivable and liberty bonds.

"The Howes Brothers Company has never passed a dividend on its first preferred stock."

In the years 1918 and 1920, the three companies filed a consolidated return; the commissioner denied the affiliation and determined a deficiency of $3,978.23 against the hide company for 1918, and a deficiency of $25,035.72 against the Howes Brothers Company for 1920. If entitled to affiliation, the loss in the Huntington Company would absorb these deficiencies.

Unquestionably, the Howes brothers are the dominant, managerial, and economic power of the three concerns. In common phrase, the Huntington Company and the hide company are subsidiaries of the Howes Brothers Company. The three concerns are a business unit.

In business and in financial control they are clearly affiliated. Whether they are affiliated within the fair construction of the taxing statute is the only possibly doubtful question.

Considering first the Huntington Company: Its stock is, to the extent of 1,035 shares out of 1,200 shares, owned by the Howes brothers or their entirely owned hide company. The Huntington Company is also largely in debt to the Howes Brothers Company and/or the hide company. We think it quite clear that the minority interests are, as this court held in Kile & Morgan Co. v. Commissioner, 41 F.(2d) 925, only negligible. Moreover, the minority stock is practically all held by relatives, at least by marriage, or employees.

The main question is as to the minority holding of first preferred stock in the Howes brothers' corporation. This company issued these callable preferred stocks in order to get more cash for their expanding and prosperous business. Both the A and B series are callable on 90 days' notice. None of the preferred stockholders have even attended a stockholders' meeting in person. They have either neglected the meetings, or given their proxies to some one of the Howes brothers. Their practical business relation to the enterprise is very much like that of bondholders, at least during times of prosperity. During the years in question, the Howes Brothers Company and the wholly controlled hide company, one or both, could without apparent embarrassment have called all these preferred stocks and paid therefor out of available surplus.

It follows that, in a practical, financial, and business sense, the same interests controlled this corporation. The technical situation is not significantly different than in Commissioner v. Crescent Leather Co., 40 F.(2d) 833, 835, where this court, after analysis of the record said:

"The Crescent Leather Company, through its president and treasurer, controlled by ownership, contract, and otherwise all the voting stock of the Buckman Tanning Company, the two corporations were entitled to be affiliated and file a consolidated return."

These views accord with those of the Seventh Circuit in Great Lakes Hotel Co. v. Commissioner, 30 F.(2d) 1, and a decision by the Sixth Circuit in Commissioner v. Shillito Realty Co., 39 F.(2d) 830, 69 A. L. R. 1266. They are also in accord with the weight of the decisions of the B. T. A. See Appeal of Isse Koch & Co., 1 B. T. A. 624; Appeal of Hagerstown Shoe & Legging Co., 1 B. T. A. 666; Appeal of Midland Refining Co., 2 B. T. A. 292; Richfield Oil Co. v. Commissioner, 13 B. T. A. 1050; Wilshire Oil Co. v. Commissioner, 13 B. T. A. 1150; Gong Bell Mfg. Co. v. Com'r, 15 B. T. A. 152, 157; Atlantic City Electric Co. v. Commissioner, 15 B. T. A. 1084, 1086, 1089. The same doctrine of adopting economic control as the test of the right to make affiliated returns was, in effect, followed by this court in Commissioner v. Crescent Leather Co., supra, and in Kile & Morgan Co. v. Commissioner, supra.

We do not overlook that there are court decisions, which, if not distinguishable on the facts, look the other way. Those decisions are Commissioner v. Adolph Hirsch & Co., 30 F.(2d) 645; Ice Service Co. v. Commission-

er, 30 F.(2d) 230, both in the Second Circuit, and United States v. Cleveland, etc., R. R., 42 F.(2d) 413, where Judge Mack, in the Sixth Circuit, makes a detailed review of the history of the legislation, and cites most of the pertinent authorities. Compare Goldstein Bros. Amusement Co. v. White, Collector, 33 F.(2d) 787 (D. C. Mass. Dist.). In dicta, possibly in decision, these cases may be inconsistent with the view that we reach. We think them not clearly consistent with the manifest purpose of Congress to treat an economic and business unit as also one for tax purposes. Our result is just, whether it makes for or against the government as to the amount of taxes. Certainly there is no controlling decision of the Supreme Court the other way. We think that both on principle and on the weight of authority our conclusion is correct.

The general result is that we hold the conclusions of the Board of Tax Appeals in the instant case unwarranted. We think these three corporations were entitled and required to make a consolidated return.

The orders or decisions of the Board of Tax Appeals are vacated, and the cases are remanded for further proceeding not inconsistent with this opinion.