## COMMISSIONER OF INTERNAL REVENUE v. ATLANTIC CITY ELECTRIC CO.

### No. 330.

Circuit Court of Appeals, Second Circuit.

April 4, 1932.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, Eugene Meacham, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Graham Sumner and Courtland Kelsey, both of New York City, for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The respondent, a taxpayer, and the Scranton Electric Company, are public service corporations. The former is organized under the laws of New Jersey and the latter under the laws of Pennsylvania. The Board considered their petitions together, and it is now stipulated that the petition of the respondent be considered and determined and that the decision of this court be accepted as controlling in the Scranton Electric Company appeal, for the questions involved are similar.

The petitioner determined deficiencies on the basis of separate returns for each taxpayer and refused to allow them to file consolidated returns with the American Gas & Electric Company, which company owned all the common stock of this respondent. The respondent supplied light, heat, and power service to Atlantic City, N. J., and its environs. It was organized in 1907, and during the taxable years it had outstanding 12,500 shares of common stock of the par value of $100, and 3,702 shares of preferred stock, 655 to 761 shares of which were owned by stockholders of the American Gas & Electric

Company. This company therefore was a stockholder of 77 per cent. of the total outstanding stock of respondent. The preferred stock was entitled to vote, and was preferred to the extent of an annual cumulative dividend of 6 per cent. and also on final distribution. It was redeemable at any time.

The Scranton Electric Company was organized in October, 1907, and resulted from a merger of several heating, lighting, and power companies. All its outstanding common stock was held by the American Gas & Electric Company as well as 494 to 608 shares of its 10,700 shares of preferred stock, which gave the American Gas & Electric Company ownership of 70 per cent. of the outstanding capital stock. The preferred stock had the same privileges as to voting redemption and dividends as that of the respondent. The American Gas & Electric Company was a holding corporation, and had absolute ownership of some 30 or 40 lighting and power companies in the Atlantic and Middle States. Some had preferred stock outstanding; others had not. The entire common stock of both the respondent and the Scranton Company was pledged under a collateral trust agreement to secure collateral trust bonds of the American Gas & Electric Company, and it was provided that preferred stock should not be issued by either of these taxpayers in an amount exceeding 30 per cent. of the total outstanding stock. The American Gas & Electric Company had more than 3,000 stockholders, some of whom were the owners of preferred stock in one or more of its subsidiary companies, but the control and ownership was exercised by the American Gas & Electric Company through its ownership of the common stock. Dividends were regularly paid. The officers of the American Gas & Electric Company held similar positions with both taxpayers. The directors of both taxpayers were directors in the American Gas & Electric Company, except four of the Scranton Company who were required by law to be residents of the state of Pennsylvania. The principal office of the American Gas & Electric Company was in New York City, where its general accounting system was kept and the business operations of both taxpayers were conducted. Local collections were made by the local officers and employees of the taxpayers, but when disbursements on deposits were to be made, they were authorized by the American Gas & Electric Company. Construction work was done and improvements were made only after approval by the American Gas & Electric Company.

The Board decided that the Scranton Company was entitled to affiliation with the Lackawanna Light Company for the years in question, and that they might file a consolidated return. It held that the Scranton Company and the respondent were affiliated with the American Gas & Electric Company, and that these companies might file consolidated returns.

The petitioner argues that, before these corporations are entitled to affiliation, it must appear that one corporation owns directly or controls through closely affiliated interests or by a nominee substantially all the stock of the other or others, or that substantially all the stock of two or more of the corporations is owned or controlled by the same interests. Section 1331 of the Revenue Act of 1921, c. 136, 42 Stat. 227, 319; section 240 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, 1081. Both statutes are concerned with the control of stock and make no distinction between preferred and common stock. They do relate to voting stock. Handy & Harman v. Burnet, Com'r, 284 U. S. 136, 52 S. Ct. 51, 76 L. Ed. ——; Com'r of Internal Revenue v. Shillito Realty Co. (C. C. A. 6) 39 F.(2d) 830, 69 A. L. R. 1266; Ice Service Co. v. Com'r of Internal Revenue, 30 F.(2d) 230 (C. C. A. 2); Com'r of Internal Revenue v. Adolph Hirsch & Co., 30 F.(2d) 645 (C. C. A. 2).

The question is therefore presented whether the American Gas & Electric Company owned directly or controlled all, or substantially all, the voting stock of each of the taxpayers, or whether similar interests owned and controlled substantially all the voting stock of the three corporations. With 77 and 70 per cent., respectively, of the voting stock owned by the American Gas & Electric Company, there was still outstanding redeemable preferred stock in the hands of third parties. Ownership of 76 per cent was held not to constitute substantially all the stock of a corporation in Handy & Harman v. Burnet, Com'r, supra; 85 per cent. in Burnet v. Bank of Italy, 46 F.(2d) 629 (C. C. A. 9); 77 to 84 per cent. in United States v. Cleveland, P. & E. R. Co., 42 F.(2d) 413 (C. C. A. 6); 83½ per cent. in Jos. Denunzio Co. v. Com'r of Internal Revenue, 49 F.(2d) 41 (C. C. A. 6); and 80 per cent. in Wadhams & Co. v. United States, 67 Ct. Cl. 235.

The respondent argues that, since the preferred stock of both taxpayers was subject to redemption at any time by vote of the common, the American Gas & Electric Company therefore controlled the preferred stock held by the other stockholders. It was

found by the Board that the preferred stockholders regularly voted in accordance with the wishes of the American Gas & Electric Company and permitted that company to control and carry on the business of the taxpayer companies. But control as used in the statute refers to stock control, not control of the business. It must be a legal enforceable control as distinguished from a control resting solely on acquiescence, exigencies of business, or other considerations which have no binding force. Handy & Harman v. Burnet, Com'r, supra. The right to redeem stock by purchase means nothing in the matter of control until exercised. It gave the common stockholders here no control over the preferred which was enforceable at law. There was no right to vote or to otherwise control it for the purposes of management of the corporation. Peytona Lumber Co. v. Com'r (C. C. A. 4) 55 F.(2d) 27, decided Jan. 14, 1932. Until the option to purchase was exercised, the holders of the preferred stock were not only the beneficial owners, but also the legal owners, with the right to use the stock in any manner they wished, whether for control of the corporation or for purposes of management. See Burnet v. Howes Bros. Hide Co., 284 U. S. —, 52 S. Ct. 126, 76 L. Ed. — decided November 23, 1931. It is not enough to have merely the business and financial control of the corporations which are claimed to be affiliated. It requires more, to wit, stock control. Ice Service Co. v. Com'r of Internal Revenue, supra; Com'r of Internal Revenue v. Adolph Hirsch & Co., supra.

The Board of Tax Appeals erroneously held that affiliation existed, and therefore a consolidated return might be filed under the statute.

Order reversed.