HANDY & HARMAN *v.* BURNET, COMMISSIONER
OF INTERNAL REVENUE.

No. 14.   Argued October 19, 1931.—Decided November 23, 1931.

*Mr. William C. Breed* for petitioner.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher* and *Messrs. Whitney North Seymour, Sewall Key,* and *John H. McEvers* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner claims that it and Hamilton & DeLoss, Inc., were affiliated corporations as defined by § 240 of the Revenue Act of 1918 and that it is entitled to have its net income and invested capital for 1918 and the first month of 1919 determined on the basis of consolidated returns. The Commissioner of Internal Revenue held .

them not affiliated, rejected petitioner's claim for abatement for 1918 and asserted a deficiency for 1919. The Board of Tax Appeals approved the Commissioner's determination (17 B. T. A. 980) and upon petition for review the Circuit Court of Appeals affirmed. 47 F. (2d) 184. That decision being in conflict with decisions of other Circuit Courts of Appeals,[1] this Court granted certiorari. 283 U. S. 813.

The pertinent provisions of the section follow (40 Stat. 1081).

" § 240 (a). That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title [Title II] and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: . .

"(b). For the purpose of this section two or more domestic corporations shall be deemed to be affiliated . . . (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

Petitioner carried on the business of dealing in gold and silver bullion and specie and furnishing to silversmiths silver rolled into sheets or coils. In 1916 its officers caused Hamilton & DeLoss, Inc., to be organized, to erect a factory and to take over the work of its stamping depart-

---

[1] *Ice Service Co.* v. *Commissioner*, 30 F. (2d) 230, and *Commissioner* v. *Adolph Hirsch & Co.* 30 F. (2d) 645. (C. C. A.-2.) *United States* v. *Cleveland, P. & E. R. Co.,* 42 F. (2d) 413. (C. C. A.-6.) *American Auto Trimming Co.* v. *Lucas,* 37 F. (2d) 801. (App. D. C.)

*J. Rogers Flannery & Co.* v. *Commissioner,* 42 F. (2d) 11. (C. C. A.-3.) *Pelican Ice Co.* v. *Commissioner,* 37 F. (2d) 285. (C. C. A.-5.) *Great Lakes Hotel Co.* v. *Commissioner,* 30 F. (2d) 1. (C. C. A.-7.) *Burnet* v. *Wilshire Oil Co.,* 46 F. (2d) 975. (C. C. A.-9.)

ment. During the taxable periods six men owned 93.71 per cent. of the stock of petitioner. The same men owned over 75 per cent. of the stock of Hamilton & DeLoss, Inc. Hamilton did not own or control any of the stock of petitioner. Twenty per cent. of the stock of the new company was issued to him and he became its president. He gave to a bank his notes endorsed by DeLoss to obtain money to pay for the stock. Before the beginning of 1918 he executed an irrevocable stock power to one Higgins, and the latter, by like instrument, assigned the stock to DeLoss, who deposited it with the bank as collateral security for the payment of Hamilton's notes. Hamilton failed to pay and, February 1, 1919, after the expiration of the tax periods, DeLoss paid the notes and took over the stock.

Prior to that time Hamilton attended all the stockholders' meetings but never voted in opposition to the owners of the majority stock of both corporations. Hamilton & DeLoss, Inc., paid him a salary at the rate of $10,000 per year, but the other officers of that corporation, being officers, directors or employees of the petitioner, received their compensation from the latter, although a large part of their time was devoted to the business of the former. During the taxable periods the corporations were operated as a business unit, and Hamilton & DeLoss, Inc., sustained a net loss.

It may be assumed that the pledge as collateral was also to protect DeLoss as endorser. But it does not appear that, as between him and Hamilton, he was entitled to control voting power, or to have the stock transferred to him of record, or to have any use or benefit therefrom unless and until required to pay the notes. It was not held by or for him. The losses sustained by Hamilton & DeLoss, Inc., did not, in respect of that stock, directly or indirectly result to his disadvantage. The section requires control of substantially all of the stock; control of

the corporations is not enough.[2]  The carrying on of a business unit by two or more corporations does not in itself constitute affiliation.  The shares of Hamilton & DeLoss, Inc., owned by the six shareholders did not constitute substantially all of its stock.[3]  We assume in favor of petitioner that they, through their power over Hamilton's official position and salary, their ability to dominate both corporations or by other means, were in position effectually to influence him in respect of the voting, use or disposition of the stock issued to him, and thus as a practical matter to exert a kind of control called by counsel " actual " to distinguish it from a legally enforceable control.

The purpose of § 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise, even though it was conducted by means of more than one corporation.  Subsection (b) clearly reflects the intention, by means of such returns, to secure substantial equality as between shareholders who ultimately bear the burden.  That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated.[4]  It re-

---

[2] It was so held in *Ice Service Co.* v. *Commissioner,* 30 F. (2d) 230, 231; *Commissioner* v. *Adolph Hirsch & Co.,* 30 F. (2d) 645, 646; *American Auto Trimming Co.* v. *Lucas,* 37 F. (2d) 801, 803; *United States* v. *Cleveland, P. & E. R. Co.,* 42 F. (2d) 413, 419; *Commissioner* v. *Gong Bell Mfg. Co.,* 48 F. (2d) 205, 206; *Onondaga Co.* v. *Commissioner,* 50 F. (2d) 397, 399.

[3] *United States* v. *Cleveland, P. & E. R. Co.,* 42 F. (2d) 413, 419. *Burnet* v. *Bank of Italy,* 46 F. (2d) 629, 630.  *Jos. Denunzio Fruit Co.* v. *Commissioner,* 49 F. (2d) 41.  *Wadhams & Co.* v. *United States,* 67 Ct. Cl. 235.

[4] Treasury Regulations 41, Art. 77; § 1331 (a), Revenue Act of 1921, 42 Stat. 319. § 336, House Bill 12863; § 240 (b), same Bill; Senate Report No. 617 (Senate Documents, Vol. 4, Document 310, 65th Congress, 3d Session); H. R. Conference Report No. 1037, p. 15, same session.  Regulations 45 (1920 ed.) Arts. 631, 633.

quires no discussion to show that such returns will not make against inequality or evasion unless the same interests are the beneficial owners in like proportions of substantially all of the stock of each of such corporations. *Alameda Investment Co.* v. *McLaughlin,* 28 F. (2d) 81. *Montana Mercantile Co.* v. *Rasmusson,* 28 F. (2d) 916. *Commissioner* v. *Adolph Hirsch & Co.,* 30 F. (2d) 645, 646. *Commissioner of Internal Revenue* v. *City Button Works,* 49 F. (2d) 705. Affiliation on any other basis would not make against inequality or evasion. It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute.

*Judgment affirmed.*