RICHARDS & HIRSCHFELD, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21715. Promulgated December 24, 1931.

*Bern Budd, Esq.*, and *Kenneth C. Quencer, Esq.*, for the petitioner.
*J. A. Lyons, Esq.*, and *H. B. Hunt, Esq.*, for the respondent.

1292

■■■■■■■■■■■■■■■■

OPINION.

SMITH: The respondent's determination that the petitioner and the Contractors Company were affiliated during the taxable year 1920 is based upon a holding "that in this case husband and wife constitute one interest." The statute (section 240 (b) of the Revenue Act of 1918) provides that:

* * * two or more domestic corporations shall be deemed to be affiliated * * * if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The petitioner contends that since 68 per cent of its stock was held by Claire B. Richards and Lillie S. Hirschfeld, who owned no stock

in the Contractors Company, and since the laws of the State of New York recognize the separate property rights of husband and wife, substantially all of the stock of the two companies was not *owned* by the same interests, but petitioner fails to show that Richards and Hirschfeld did not beneficially own or *control* the stock held by their wives. It is incumbent upon the petitioner to show that neither ownership nor control reposed in the same interests. While the property rights of husband and wife under the laws of the State of New York may be entirely separate and distinct, it does not follow that husband and wife may not constitute the same interests within the meaning of the taxing statute.

In *Handy & Harman* v. *Commissioner*, 47 Fed. (2d) 184; affd. 284 U. S. 136, the Supreme Court had under consideration the interpretation of section 240 of the Revenue Act of 1918. The court stated:

The purpose of § 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation. Subsection (b) clearly reflects the intention, by means of such returns, to secure substantial equality as between shareholders who ultimately bear the burden. That intention is shown by the legislative history and was given effect by the regulations contemporaneously promulgated. It requires no discussion to show that such returns will not make against inequality or evasion unless the same interests are the beneficial owners in like proportions of substantially all of the stock of each of such corporations. *Alameda Investment Co.* v. *McLaughlin*, 28 F. (2d) 81. *Montana Mercantile Co.* v. *Rasmusson*, 28 F. (2d) 916. *Commissioner* v. *Adolph Hirsch & Co.*, 30 F. (2d) 645, 646. *Commissioner of Internal Revenue* v. *City Button Works*, 49 F. (2d) 705. Affiliation on any other basis would not make against inequality or evasion. It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute.

At the hearing of this proceeding counsel for the petitioner stated: " It is upon the dissimilarity of the stock—of the stockholdings that we base our contentions that the interests controlling these corporations are not the same." No evidence was introduced as to whether the shares of stock of the petitioner owned by the wives of Hirschfeld and Richards were beneficially owned by their husbands nor was any evidence introduced to the effect that such shares of stock were not " controlled " by Hirschfeld and Richards. It is furthermore to be noted that on January 5, 1922, the shares of stock of the petitioner issued to the Contractors Machinery & Export Company for its assets were distributed to the wives of the petitioners even though

they never owned any shares of stock of such company. Upon the evidence of record it must be held that the evidence adduced at the hearing does not overcome the prima facie correctness of the respondent's determination that husband and wife constituted the same interests in the instant case and that the petitioner and Contractors Machinery & Export Company were affiliated. His determination is accordingly sustained. Cf. *Hancock Construction Co.*, 11 B. T. A. 800; *Hewett Grain & Provision Co. of Escanaba*, 14 B. T. A. 281; *Wells Brothers Co. of Illinois*, 16 B. T. A. 79.

The second issue relates to the alleged bad debt deductions taken by the Contractors Company. To be deductible, such debts must be ascertained to be worthless and charged off within the taxable year. There is no question as to the charge-off of the debts in the amount claimed.

The Purdy & Henderson account for the taxable year 1920 shows charges and credits thereto in approximately equal amounts. The exact debit balance in this account at the end of year is not shown, but we assume that it was $8,294.96, since that is the amount claimed as a bad debt deduction. Shortly after the close of the taxable year 1920, the debtor paid $6,200 on this account, and in March, 1921, the Contractors Company's books show a charge of $436.20. Such facts do not support the petitioner's claim that this account was worthless on December 31, 1920. The debtor was not insolvent at that time but was temporarily short of operating funds due to unusual conditions then prevailing in Cuba; it had a large cash balance in one of the Cuban banks under the protection of the moratorium. The evidence does not establish the worthlessness of this debt.

The record discloses a different situation with respect to the Bahmann Iron Works debt in the amount of $2,288.58, which was properly ascertained to be worthless and charged off within the taxable year under consideration. At the close of the year 1920, that company was in the hands of a receiver and upon the best information available it was ascertained by an officer of the Contractors Company that the creditors of the bankrupt would probably recover nothing. The fact that the receiver made small payments on this account in later years does not affect the reasonable ascertainment of its worthlessness at the close of 1920. The claimed deduction of this debt should be allowed.

Reviewed by the Board.

*Further proceedings will be had under Rule 62 (b).*

LOVE and MURDOCK concur in the result.

MARQUETTE, STERNHAGEN, TRAMMELL, and GOODRICH dissent.