PEYTON-DU PONT SECURITIES COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 29248.   Promulgated February 19, 1932.

*Walter J. Bartnett, Esq.,* for the petitioner.
*J. M. Leinenkugel, Esq.,* for the respondent.

558

## OPINION.

MARQUETTE: Except as incorporated in our findings of fact, the "Additional Statement of Facts" filed at the hearing has been disregarded as being irrelevant to the issues here presented.

The petitioner filed a consolidated income-tax return for 1923 for itself and five other companies. Affiliation was denied by the respondent and petitioner now concedes that such denial was correct in regard to the Cardiff Marble Company and the Standard Stoker Company, but insists that respondent erred in denying affiliation with the Southern Menhaden Corporation, Charles J. Maxwell & Company, and the McIntosh-Morello Orchards Company.

The Revenue Act of 1921, so far as it is here pertinent, provides:

SEC. 240. (a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922,

make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

\* \* \* \* \* \* \*

(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The provisions of subsection (c) have been considered by the Supreme Court in *Handy & Harman* v. *Burnet*, 284 U. S. 136. In that case six men owned 93.71 per cent of the stock of the taxpayer and they also owned about 75 per cent of the stock of Hamilton & DeLoss, Inc., a subsidiary. Harold H. Hamilton was president of the subsidiary, and 20 per cent of its stock was issued to him. The taxpayer, through its power over Hamilton's official position and salary, and its ability to dominate both corporations, was in position effectually to influence Hamilton in respect of the voting, use or disposition of his stock, and thus, as a practical matter, to exert control. Respecting the statute in question, the court said:

The section requires control of substantially all of the stock; control of the corporation is not enough. The carrying on of a business unit by two or more corporations does not in itself constitute affiliation. The shares of Hamilton & DeLoss, Inc., owned by the six shareholders did not constitute substantially all of its stock \* \* \*. It would require very plain language to show that Congress intended to permit consolidated returns to depend upon a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute.

We think the above decision is controlling here. At the time of the stockholders' meeting in May, 1923, and for the remainder of that year, petitioner owned 66⅔ per cent of the Maxwell Company's stock, while 33⅓ per cent was held by a person having no connection with, or financial interest in, the petitioner. Although petitioner held and voted a proxy for that one-third interest, the evidence indicates that the control thus acquired by the petitioner rested upon the exigencies of business and hence was not the legal control of the stock required by the statute.

Respecting the Orchard Company, petitioner owned 71.48 per cent of the stock in 1923. Through proxies 100 per cent of the Orchard Company's stock was voted by petitioner. The evidence does not disclose that petitioner had any title or beneficial ownership in the

stock for which the proxies were given, and the proof therefore fails to establish the control required by the statute to constitute affiliation.

During the taxable year petitioner owned 75.54 per cent of the Menhaden Company's capital stock. It is true that four of petitioner's stockholders and directors together owned 7.94 per cent of Menhaden Company stock, but we can not assume that such individual holdings were controlled by petitioner within the meaning of the statute. In each instance the petitioner owned less than 76 per cent of the stock of the corporation with which it claims affiliation, and no control of the other stock is shown. It has been held repeatedly that such a percentage is insufficient to constitute " substantially all." *Handy & Harman* v. *Burnet, supra; Burnet* v. *Bank of Italy*, 46 Fed. (2d) 629; *Denunzio Fruit Co.* v. *Commissioner*, 49 Fed. (2d) 41. We conclude, therefore, that no affiliation existed with either of the three companies in question during 1923.

The petitioner also contends that it is entitled to deductions on account of bad debts with respect to certain promissory notes as follows: $95,090.66 representing the purchase price of the Menhaden Company's notes bought by petitioner from Frank L. Connable, which amount petitioner charged to profit and loss on December 31, 1923, and $60,500 representing money loaned in 1922 and 1923 by petitioner to the Menhaden Company and evidenced by that company's promissory notes.

Under section 231 (a) (5) of the Revenue Act of 1921, debts may be deducted when they are ascertained to be worthless and are charged off within the taxable year. Both the ascertainment of worthlessness and the charging off must take place within the taxable year. In our opinion the evidence offered does not show that the notes, or the debts they represented, were ascertained to be worthless during 1923. The Menhaden Company may have been in poor condition financially, but the evidence does not disclose that any of the promissory notes were past due in 1923, nor that the debtor company was not able to pay the notes when they did fall due. The fact that petitioner has never received any payment on the notes is not proof that they were worthless, or ascertained to be worthless in 1923. At the close of that year there was a fair possibility that the coming fishing season would be profitable for the Menhaden Company and enable it to meet its obligations when due. Clearly, the evidence adduced does not establish that petitioner had ascertained in 1923 that the notes in question were without value. So far as concerns the notes given for loans, not only does the same reasoning apply, but apparently they were not charged off petitioner's books at all. The petitioner thus has failed to sustain the burden of establishing its right to the deductions claimed. Cf. *Thomas J. Avery*, 5

B. T. A. 872; affd., 22 Fed. (2d) 6; *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566.

During 1923 the petitioner entered on its books of account charges against four subsidiary companies for interest and financial commissions accrued during that year in the aggregate amount of $34,583.45. The books were kept upon the accrual basis and respondent has included the amounts as taxable income. It is now contended that the items did not constitute income but were merely bookkeeping entries made in the belief that petitioner was entitled to file a consolidated return, in which event the items credited on petitioner's books would be eliminated by corresponding entries to expenses on the books of the subsidiaries.

We are not impressed by the argument. Apparently, the items were proper ones to be charged against the companies which incurred them, and, as petitioner was on the accrual basis, the entries were of necessity made at the time of accrual. The making of proper entries to reflect the petitioner's business transactions was not dependent upon or affected by the petitioner's right to file a consolidated return. Cf. *Clarence Shock*, 1 B. T. A. 528; *S. W. Harris*, 2 B. T. A. 933; *Mianus Motor Works, Inc.*, 5 B. T. A. 435. The interest and commissions, therefore, constituted accrued income to the petitioner in 1923. When, as here, entries must be made to properly reflect business transactions, the validity and force of such entries can not be dispelled because the taxpayer believed he could offset their effect by a method which, in fact, he is not entitled to pursue. We sustain the respondent's determination upon this point.

The petitioner also charged on its books and against some of its subsidiaries amounts aggregating $5,458.07. Of this total, $4,888.07 represented salaries paid by petitioner to its own employees, while $570 represented rental charges. The subsidiaries and petitioner occupied the same general offices and petitioner's employees performed the office work necessary for the subsidiaries.

The amounts in question represented expenses paid out by the petitioner. For purposes of its own petitioner chose to carry the items on its books as charges allocated to subsidiary companies rather than as expense to itself. These charges having been made against the subsidiaries upon the books of petitioner, they either represented charges properly made against them or were fictitious entries for tax purposes. The petitioner's contention that they were mere bookkeeping entries made in the belief that they would be eliminated in a consolidated return is not entitled to much weight in the circumstances, and in our opinion these amounts should be treated as advances to the subsidiaries and, as such, represent neither income nor deductible expense to petitioner.

*Decision will be entered under Rule 50.*