## ALUMINUM CO. OF AMERICA v. UNITED STATES.

### No. 6635.

District Court, W. D. Pennsylvania.
Oct. 11, 1932.

return, and separate returns. The consolidated return was used as a basis for computing the excess profits tax; the separate returns were used as a basis for computing the income tax. In those returns, the affiliated companies were required to include in their gross income their proportionate part of an aggregate profit of $1,694,355.17 realized on sales of merchandise from one affiliated company to another. On December 31, 1917, there was in the possession of one or more of these affiliated companies, the merchandise on which this aggregated profit of $1,694,355.17 had been computed from intercompany sales.

For the year 1918, a consolidated return was required, both for the excess profits tax and the income tax. In computing the income tax for 1918, the Commissioner disregarded entirely the intercompany sales in 1917, on which this aggregate profit of $1,694,355.17 had been computed for the determination of the income tax liability of the several companies comprising the affiliated group for the year 1917, and took the original cost price of such merchandise before any intercompany sales as the basis for computing the 1918 income tax.

We believe he was right in so doing, for there is no other way in which he could comply with the Revenue Act of 1918 requiring consolidated returns of affiliated companies.

The fact that under the Revenue Act of 1917 (40 Stat. 300) the government took into account these intercompany transactions in levying the 1917 income tax, is not controlling. It had the lawful right to, and did, change the manner of computing the income tax of affiliated corporations for 1918.

This method of computation was approved by the Court of Claims in Packard Motor Car Co. v. U. S., 39 F.(2d) 991, certiorari denied 282 U. S. 848, 51 S. Ct. 27, 75 L. Ed. 752.

The plaintiff contends that this ruling effects a double income tax as to those items that were involved in the 1917 computation, and that double taxation cannot be sustained except by express legislative authority. The trouble with the plaintiff's position is that express authority does exist in section 240 of the Revenue Act of 1918. This act provides in section 240 (a), 40 Stat. 1081, in part, as follows: "That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital

John G. Buchanan, Paul G. Rodewald, and Smith, Buchanan, Scott & Gordon, all of Pittsburgh, Pa., for plaintiff.

Louis E. Graham, U. S. Atty., of Pittsburgh, Pa., Floyd F. Toomey, Asst. Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and John A. McCann, Sp. Atty., Bureau of Internal Revenue, of Pittsburgh, Pa. (Clarence M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

SCHOONMAKER, District Judge.

This is a suit for the recovery of taxes alleged to have been illegally assessed and collected under the Revenue Act of 1918. The case was heard on demurrer to the plaintiff's petition.

The petition discloses that the plaintiff, a Pennsylvania corporation, filed with the deputy collector of internal revenue for the Twenty-Third district, a consolidated return of net income and invested capital, on the basis of the calendar year 1918, of itself and some twenty-seven corporations affiliated with it, within the meaning of section 240 of the Revenue Act of 1918 (40 Stat. 1081), and paid thereon to the collector $3,315,731.50.

In computing this sum, the Commissioner of Internal Revenue included the sum of $1,694,355.17, which was the aggregate income separately reported for the calendar year 1917, by the plaintiff and its affiliated corporations, as profits earned on sales of merchandise from one affiliated corporation to another affiliated corporation. This inclusion caused the plaintiff to pay $650,632.38 more in taxes for the year 1918 than it claims it was legally liable for. Due claim for refundment has been made by the plaintiff and disallowed by the Commissioner.

For the year 1917, the plaintiff and its affiliated companies filed both a consolidated

for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return. * * * "

The purpose of this section has been stated by the Supreme Court as follows: "The purpose of section 240 was, by means of consolidated returns, to require taxes to be levied according to the true net income and invested capital resulting from and employed in a single business enterprise even though it was conducted by means of more than one corporation." Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 52, 76 L. Ed. 207.

Thus Congress has clearly expressed its intention that intercompany transactions be eliminated in computing taxable income for the year 1918. This must be done, even though double taxation results. Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379.

We, however, see no injustice in this result. We are concerned only with the correct determination of the true net income of the consolidated group in 1918. The commodities on which some of the subsidiaries made a book profit of $1,694,355.17 in 1917 were not sold by group until 1918. Nothing came into the group, or went out either, by reason of these intercompany transactions. So far as the group was concerned, these commodities that were the subject of intercompany dealing remained on hand at the end of the year 1917.

We see no escape from the conclusion that the gain to the group was first realized in 1918. In computing that group gain, there is no other basis on which to figure than the cost of these commodities to the group. If the intercompany dealings had shown a book loss of $1,694,355.17, instead of a book profit of that amount, it is quite certain that the plaintiff would not be asking us to take the intercompany dealing into account in figuring the group net income for 1918. The only fair and just way, when once one determines that consolidated returns are required, is to eliminate all intercompany transactions. This was our conclusion in Brownsville Coal & Coke Co. v. Heiner (D. C.) 38 F.(2d) 248, 251, where we stated: "We cannot unite the companies for the purpose of securing the benefits of a consolidated return and then again segregate them for the purpose of computing the disallowance of interest and restoration to invested capital. These two corporations in the computation of this tax should not be considered as a segregation of parts, but rather as a unified welded entity. When we once determine that the companies are so closely related as to permit the filing of consolidated returns, then, of course, all inter-company transactions must be eliminated."

The demurrer will therefore be sustained, and an order for judgment for the defendant may be submitted accordingly.