### GROUND GRIPPER SHOE CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 2644.

Circuit Court of Appeals, First Circuit.

Jan. 10, 1933.

Walter Powers and Sherburne, Powers & Needham, all of Boston, Mass., for petitioner for review.

Francis H. Horan, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals (Revenue Act of 1926, c. 29, §§ 1001–1003, 44 Stats. 9, 109, 110 [26 USCA §§ 1224–1226]). The petitioner contends that it and the Ground Gripper Stores, Inc., were affiliated corporations during the period here in question within the meaning of section 240 of the Revenue Act of 1918, and the same section of the Revenue Act of 1921 (40 Stat. 1081, 42 Stat. 260). The Board of Tax Appeals decided that the two corporations were not affiliated.

There is no controversy about the facts. The petitioner (which we shall refer to as the Shoe Co.) manufactures shoes that are sold at retail through the other corporation (which

we shall refer to as the Stores Co.). The taxes in question are those for the period from July 1, 1920, to April 30, 1921, $20,-832.84; and for the fiscal year April 30, 1921, to April 30, 1922, $46,946.02. During the entire period in question the Shoe Co.'s capital stock consisted of 10,000 shares common and 5,000 shares preferred. The voting power was vested in the common stock only. W. A. Julian owned 80 per cent. of it and was the dominant and controlling stockholder.

Prior to the time here in question the E. W. Burt Company had manufactured a shoe known as the Ground Gripper shoe, which it retailed through a chain of stores. The Shoe Co. acquired the entire business of the Burt Company. The Stores Co. was then organized by Julian for the purpose of marketing these shoes at retail. It took over from the Shoe Co. the chain of stores acquired from the Burt Company; and it also purchased a chain of stores owned by the Dorn Shoe Company, which had also been a retail outlet for the Ground Gripper shoe. The Stores Co. paid for the stores transferred to it by the Shoe Co. by issuing 3,605 shares of its common and 1,663 shares of its preferred stock to the Shoe Co., and for the stores, transferred to it by the Dorn Company, by issuing to the Dorn Company 3,395 shares of its common and 1,147 shares of its preferred stock. This was substantially all the stock which it issued. The common was the voting stock.

The result was that Julian controlled the Shoe Co., and the Shoe Co. controlled the Stores Co.; but in the Stores Co. there was a large minority interest owned by Dorn. Dorn was the president and manager of the Stores Co. Julian at all times dominated both companies. It was orally agreed between Julian and Dorn that, in case Dorn left the employ of the Stores Co. for any reason, the Shoe Co. could purchase Dorn's stock in the Stores Co. This put it in the power of the Shoe Co. to acquire Dorn's stock by bringing about his discharge from the Stores Co.

Two Revenue Acts are involved—those of 1918, § 240 (b), and of 1921, § 240 (c). The wording of the two sections is, however, identical. "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

The petitioner does not contend that clause 2 of these sections applies. It is clear that the Shoe Co. does not own directly substantially all of the stock of Stores Co. The question before us then is a very narrow one, whether the Shoe Co. "controls through closely affiliated interests * * * substantially all the stock" of the Stores Co.

In both clauses of the statute the dominant word is "control." The meaning of "control" under clause 2 is settled by Handy & Harman v. Burnet, Commissioner, 284 U. S. 136, 52 S. Ct. 51, 76 L. Ed. 207, which holds that the control must be enforceable legal control, "control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute." Butler, J., at page 141 of 284 U. S., 52 S. Ct. 51, 53, 76 L. Ed. 207. We see no reason why "control" in the first clause should not be given the same meaning as in the second. It means absolute power in one corporation to control substantially all the stock of the other. Howes Bros. Hide Co. et al. v. Commissioner, 49 F.(2d) 878 (C. C. A. 1), was reversed in Burnet, Commissioner, v. Howes Bros. Hide Co. et al., 284 U. S. 583, 52 S. Ct. 126, 76 L. Ed. 505, and is no longer law.

Applying these views of the law to the facts before us: Nearly half the voting stock of the Stores Co. was owned by Dorn. Over this stock the Shoe Co. had no control whatever. It had no control over Dorn with respect to it, except a right to purchase it in case of the termination of Dorn's employment by the Stores Co. for any reason. The fact that under some conditions Dorn's stock might be taken over by the Stores Co. has nothing to do with the matter. Until so taken over it was Dorn's stock.

The decision of the Board of Tax Appeals is affirmed.