WARNER COLLIERIES COMPANY OF DELAWARE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34679.   Promulgated June 8, 1937.

*H. A. Mihills, C. P. A.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This case is now before us on a mandate of the United States Circuit Court of Appeals for the Sixth Circuit. The Board's original report was promulgated on September 29, 1932, and the decision was entered the following day (26 B. T. A. 1047). An appeal was taken by the respondent on the transferee issue.

The Circuit Court of Appeals, without opinion, remanded the cause for further proceedings to be had in conformity with the judgment of the court. That judgment was as follows:

The court being of opinion that the Board of Tax Appeals abused its discretion in refusing, after the recess at the hearing, to permit counsel for the Commissioner to submit further proofs on the question of the net value of the assets of the Crawford Hill Coal Company transferred to the respondent as of June 30, 1919, and also erred in refusing to consider evidence thereafter offered by the Commissioner touching the value and amount of such assets.

It is ordered that the order of the Board be reversed and the cause remanded for a redetermination of the question after permitting the Commissioner to introduce such proofs and considering the evidence pertaining thereto offered by the Commissioner and rejected by the Board.

Pursuant to the mandate a further hearing was held on March 31, 1936, at which additional evidence was adduced relating to the net value of the assets of the Crawford Hill Coal Co., transferred to the petitioner as of June 30, 1919.

In addition to the facts as found by us in our original report of September 29, 1932, we find the following facts:

The agreement of October 30, 1919, was executed and fully carried out in accordance with its terms. As provided in paragraph 5 of that contract, the Crawford Hill Coal Co., on January 29, 1920, directed in writing that the 4,500 shares of the petitioner's stock be issued to the former company's stockholders in proportion to their stockholdings.

The balance sheet of the Crawford Hill Coal Co., as of June 30, 1919, shows assets aggregating $240,558.18, consisting chiefly of accounts receivable, $58,442.11; plant, less reserves, $157,695.33; and Liberty Bonds, $82,500; with current liabilities and taxes of $10,-518.27; capital stock, $90,000; surplus, $168,319.01; and profit and

loss, $32,404.77. The net value of the assets of the Crawford Hill Coal Co. as of June 30, 1919, was at least $100,000 in excess of its liabilities.

The assets of the Crawford Hill Coal Co. as of June 30, 1919, were transferred to the petitioner pursuant to the agreement of October 30, 1919. The business of Crawford Hill Coal Co. was conducted by it from June 30, 1919, to October 30, 1919, the date of the transfer of its assets to the petitioner. The original entries reflecting the transactions of the Crawford Hill Coal Co. during that period were made on the Crawford Hill Coal Co.'s books and were transferred to the petitioner's books. They were there set up with similar entries relating to other properties acquired by the petitioner. All profit or loss resulting from the operation of the Crawford Hill Coal Co. after June 30, 1919, accrued to the petitioner. The petitioner derived a profit from such operations from June 30, 1919, to April 1, 1920. No loss appeared during that period and all liabilities incurred and paid by the Crawford Hill Coal Co. during such period related to operations and were reflected in the profit and loss account from which the petitioner received the benefit. All ledger accounts were closed as of June 30, 1919, and so transferred to the petitioner's books. Ultimately there was a complete transfer.

Liberty bonds of the face value of $82,500 and worth from 80 to 90 percent thereof were transferred by the Crawford Hill Coal Co. to the petitioner on October 30, 1919. The accounts receivable of $58,442.11, due from W. H. Warner & Co. to the Crawford Hill Coal Co., was ultimately paid in full. The liabilities shown on the balance sheet of June 30, 1919, were assumed and paid by the petitioner. The differences between the receipts and expenditures and the credit and debit balances arising from the operation of the Crawford Hill Coal Co. during the period from June 30 to October 30, 1919, were reflected in the profit and loss account of the petitioner.

Upon the transfer of its properties to the petitioner the Crawford Hill Coal Co. owned the right to receive personally or through its nominees 4,500 shares of the petitioner's capital stock. Pursuant to the written instruction of the Crawford Hill Coal Co. dated January 29, 1920, the petitioner issued such 4,500 shares to the stockholders of the former corporation in proportion to their holdings. The shares of the partnership of W. H. Warner & Co. were issued to its individual members. The stock was issued on January 30, 1920. After that date the Crawford Hill Coal Co. had no assets and was dissolved in 1921. The value of the 4,500 shares of the petitioner's stock was the net value of the assets of the Crawford Hill Coal Co. at the time they were taken over by the petitioner and it was so set up on the books of the petitioner.

The petitioner originally presented four questions in this case, briefly described as, the statute of limitations, the transferee liability, the affiliation, and the special assessment issues. In our former opinion we held that the statute of limitations did not bar the assessment of the tax against the Crawford Hill Coal Co.; that the respondent had not sustained the burden of proving the liability of the petitioner as transferee; that, although the affiliation issue did not need to be considered, yet under the decision of the Supreme Court in *Handy & Harmon* v. *Burnet*, 284 U. S. 136, the petitioner and the Crawford Hill Coal Co. were not entitled to affiliation; and that the special assessment issue had become moot.

In his petition for review to the United States Circuit Court of Appeals the respondent's assignment of errors related only to the transferee liability issue. The petitioner filed no cross appeal nor did it call the attention of the appellate court to any suggested errors in our opinion. The petitioner now asserts that our decision on the statute of limitations issue was erroneous and that it should be permitted to reopen that issue because it relates to and affects the transferee liability issue. Complaint is also made that we ignored the petitioner's contention that as a part of the statute of limitations issue the waivers filed were invalid. The validity of the waivers had no bearing under our decision that the statute did not bar assessment and, hence, it was unnecessary to discuss that point.

The respondent's position is that this case was remanded to us for action only to the extent required to carry into effect the mandate of the court and that such mandate limited the scope of our authority and decision to the receipt of evidence relating to the net value of assets of the Crawford Hill Coal Co. transferred to the petitioner as of June 30, 1919, and the effect such evidence might have on the transferee liability issue.

The rule of law applicable to the situation before us is stated in *In re Sanford Fork & Tool Co.*, 160 U. S. 247 as follows:

When a case has been once decided by this court on appeal, and remanded to the Circuit Court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The Circuit Court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. The court can not vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

In *Peavy-Byrnes Lumber Co.*, 31 B. T. A. 985; affd., 86 Fed. (2d) 234; certiorari denied, 300 U. S. 674, we discussed this question at length. In that case the mandate directed that the petitioner's tax liability should be redetermined in accordance with a specific finding of "$665,000 as the fair value of the stock, the cost of the timber, as of July 28, 1913, when the exchange was made" and we held that

we were without authority thereafter to permit the petitioner to amend its pleadings so as to raise new issues or to give any other or further relief. Cf. *H. H. Champlain*, 31 B. T. A. 587; *Swenson* v. *Commissioner*, 69 Fed. (2d) 280.

In the case at bar we find that only one question was presented to the court, that is, the refusal of the Board to receive certain evidence relating to the net value and amount of the assets of the Crawford Hill Coal Co. transferred to the petitioner as of June 30, 1919, and the bearing that such evidence would have on the transferee issue. The mandate orders the cause "remanded for a redetermination of the question after permitting the Commissioner to introduce such proofs."

The petitioner predicated its appeal to the Board on four distinct allegations of error. The adjudication of the statute of limitations issue was necessarily a determination precedent to the consideration of the other issues. Our action thereon was final in the absence of an order from the court specifically relating to that issue or a general order to rehear and redetermine the case not inconsistently with the court's opinion and mandate. We construe the word "question" in the mandate to refer to the transferee liability issue alone. The present condition of the record does not warrant the reopening of the statute of limitations issue.

The primary and controlling issue is the liability of the petitioner as transferee of the assets of the Crawford Hill Coal Co. We have no doubt that the transaction by which the transfer was accomplished was a sale. The facts show clearly that the petitioner purchased the properties and assets of the Crawford Hill Coal Co., together with those of several other companies engaged in a like business, and paid for such assets with its own stock, which had a substantial value. However, the method employed to make payment rendered the seller insolvent and unable to pay the tax, the correctness of which is not challenged. See *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401. It is well established that the insolvency of the transferor is a condition precedent to proceeding against the transferee to collect the tax. The petitioner and the Crawford Hill Coal Co. as corporations and the individual officers and directors thereof were parties to and had full knowledge of the agreement and conditions of sale. The petitioner asserts that the real transferees from whom the respondent should collect the tax are the transferor's stockholders to whom the petitioner's stock was distributed. It cites several cases in support of its theory, including *B. F. Fairless*, 19 B. T. A. 304; affd., 67 Fed. (2d) 475. However, in the opinion of the Circuit Court of Appeals in that case we find the following:

* * * The petitioners contend that, since all of the physical assets and property of the Union Company were turned over to the Metropolitan, the

latter is the transferee against which the deficiency should have been declared. We see no merit to this contention. We find nothing in the statute which limits collection of defaulted taxes owing by a dissolved or abandoned corporation to the transferees of its physical assets. Certainly the transferees of a mere holding company which has no property other than shares of stock are not immune from the operation of the section. When the Union Company sold its physical property to the Metropolitan, it became owner of Metropolitan stock, against which the tax liability could have been asserted. Distraint against the Union Company was rendered futile by its distribution of the stock to its stockholders. This is clearly a situation which section 280 was intended to meet, and we have no doubt that the tax can be assessed against and collected from the Union's stockholders to the extent of the assets they received.

The facts in the *Fairless* case present the converse of the situation before us, but we see no difference in the principle involved. The respondent is not precluded from proceeding against the transferee of assets whose disposition by the taxpayer rendered it insolvent even if other assets, constructively owned but never received by it, are subject to a like process, *Woodley Petroleum Co.*, 16 B. T. A. 253; *McGowin-Foshee Lumber Co.*, 20 B. T. A. 223; *Wayne Body Corporation*, 22 B. T. A. 401; *Estate of John W. Rapp*, 24 B. T. A. 1061.

In our former decision we said:

The assets of The Crawford Hill Coal Company were transferred to petitioner under the terms of the agreement of October 30, 1919, *as of June 30, 1919.* The record contains no enumeration or proof of the value of either the assets conveyed to petitioner nor of the liabilities assumed by it at June 30, 1919, the time of transfer. There is evidence that on March 31, 1919, the transferor possessed Liberty bonds in amount of $80,000 and had liabilities in the amount of $11,503.02, but there is no evidence that at June 30, 1919, it still owned such bonds and transferred them to petitioner; nor is there any evidence whether the amount of its liabilities increased or diminished between March 31 and June 30. We know only that petitioner received assets of an unproved value and assumed liabilities of an unproved amount. On this state of the record we must hold that respondent has not sustained the burden of proof placed on him by the statute.

The record now shows that assets of the transferor as of June 30, 1919, were worth over $100,000 in excess of its liabilities. This amount was ample to pay the tax liability of the transferor. *Fostoria Milling & Grain Co.*, *supra; Woodley Petroleum Co.*, 16 B. T. A. 253; *Concrete Industries Co.*, 19 B. T. A. 655; *Gideon-Anderson Co.*, 20 B. T. A. 106; *Magnolia Window Glass Co.*, 23 B. T. A. 1242.

Moreover, the contract itself also expressly provides that the Crawford Hill Coal Co. was deemed to have acted for and on account of the petitioner in conducting the business of the former from June 30, 1919, to the date of the transfer of its property and assets.

The petitioner thus agreed that the properties acquired and that the value thereof were to be determined and fixed on the basic date of June 30, 1919. The contract refers to an "informal agreement." We can justifiably conclude that such an agreement contemplated the acquisition of the Crawford Hill Coal Co. assets by the petitioner on that date at their value appearing on the contemporaneous balance sheets. All subsequent transactions were charged and credited to the petitioner and were reflected ultimately in the petitioner's profit and loss account. The date of the written agreement, therefore, is not exclusively decisive of the time of the transfer.

There is a further reason for holding the petitioner liable for the proposed tax. The petitioner agreed expressly:

\* \* \* to pay and satisfy any and all obligations and liabilities of whatsoever kind, nature or description, owed or incurred by said Seller on or before June 30, 1919, and to indemnify and save harmless said Seller from any and all claims, demands and actions in any manner arising out of any obligations and liabilities asserted against said Seller, and from all loss, cost, damage and expense in connection therewith.

By reason of this agreement the petitioner became specifically liable for the tax in question. *Helvering* v. *Wheeling Mold & Foundry Co.*, 71 Fed. (2d) 749; *American Equitable Assurance Co. of New York*, 27 B. T. A. 247; affd., 68 Fed. (2d) 46; *Continental Baking Co.*, 27 B. T. A. 884; affd., 75 Fed. (2d) 246; *United States Trucking Corporation*, 29 B. T. A. 940; see *California Iron Yards Corporation* v. *Commissioner*, 82 Fed. (2d) 776, and cases there cited; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77.

In our former opinion we said: "Under our decision above, the question of special assessment becomes moot." In view of the mandate it now becomes pertinent to consider the issue of special assessment. *H. H. Champlin, supra*. Upon a careful examination of the record we find nothing therein which warrants our granting the petitioner's request for special assessment.

We said in our former opinion that the decision of the United States Supreme Court in *Handy & Harmon* v. *Burnet, supra*, was determinative of the affiliation issue. We see no reason to alter our view that the petitioner and the Crawford Hill Coal Co. are not entitled to affiliation.

> *Decision will be entered for the respondent in the sum of $21,721.33 for the fiscal year ending March 31, 1919.*