## COMMISSIONER OF INTERNAL REVENUE v. COLORADO & SOUTHERN RY. CO.
### No. 1749.

Circuit Court of Appeals, Tenth Circuit.
March 3, 1939.

346

Robert N. Anderson, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

J. L. Rice, of Denver, Colo. (J. C. James and T. J. Lawless, both of Chicago, Ill., and J. C. Street, of Denver, Colo., on the brief), for respondent.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes for the year 1920.

During the calendar year 1920 the Colorado & Southern Railway Company, a Colorado corporation, was affiliated with a number of other corporations. The parent corporation and two of its affiliates, the Wichita Valley Railway Company and the Fort Worth & Denver City Railway Company, were common carriers engaged in interstate commerce. Their properties were taken over and operated by the United States under the Federal Railroad Control Act of March 21, 1918, 40 Stat. 451, during the period from January 1, 1918, to February 29, 1920, inclusive.

The remaining affiliates were not under federal control in 1920 and one, the Denver & Interurban Railroad Company, was never under federal control. It sustained a net loss in the year 1920 of $187,731.52.

Pursuant to the provisions of Section 240 of the Revenue Act of 1918, 40 Stat. 1057, 1081, the Colorado & Southern filed a consolidated income tax return for itself and its affiliates for the year 1920, and the entire group was taxed thereon as a single enterprise or business.

The effect of the provisions of Section 230 of the Revenue Act of 1918, 40 Stat. 1075, was to impose a lower tax rate on railroad corporations under federal control than was generally imposed on other corporations.[1] Since the Colorado

[1] In Southern Railway Company v. Commissioner, 4 Cir., 80 F.2d 884, 885, the court said:

"There was imposed by the Revenue Act of 1916 a normal tax of 2 per cent. on the income of corporations. See Act of September 8, 1916, 39 Stat. 765, § 10, and Act of March 3, 1917, 39 Stat. 1000. The War Revenue Act of October 3, 1917, imposed a special war tax of 4 per cent. on the income of corporations, in addition to the normal tax of 2 per cent. imposed by the Revenue Act of 1916. See 40 Stat. 302, § 4. The Federal Railroad Control Act of March 21, 1918, 40 Stat. 451, 457, provided in section 12 thereof that moneys derived from the operation of the railroads under federal control should be disbursed for expenses of operation, payment of taxes, and other purposes as specified in the act, with the exception, however, that income and excess profits taxes imposed by the War Revenue Act of October 3, 1917, 40 Stat. 302, should be paid by the carriers out of their own funds. The Revenue Act of 1918, 40 Stat. 1057, 1075, 1076, § 230, imposed an income tax of 10 per cent. on corporations for years subsequent to the year 1918 and provided that, for the purposes of the Federal Railroad Control Act of March 21, 1918, four-fifths of the tax so imposed should be treated as levied by an amendment to the War Revenue Act of 1917. It resulted, therefore, that of the 10 per cent. income tax imposed by the Revenue Act of 1918, on railroads, 2 per cent. was normal tax and was to be borne by the Director General, whereas 8 per cent. was 'war tax' and was to be borne by the railroads out of their own funds. * * *

"As the tax on the net income of the railroad for the year 1920 was not assessed or payable until the following year, it is clear that the income tax for the entire year would fall on the railroad except for the provision which we have quoted requiring apportionment; and, as the 8 per cent. 'war tax' is to be borne by the railroad in any event, the provision as to apportionment, in so far as it affects federal income tax, is applicable only to the 2 per cent. normal tax. In other words, the Revenue Act of 1918

& Southern, the Wichita Valley, and Fort Worth & Denver were under federal control during the months of January and February, 1920, and were entitled to the benefit of the lower tax rate for such period, the question arose as to the proper treatment of the loss of $187,731.52 of the Denver & Interurban Company which was not under federal control.

The Board of Tax Appeals held that such net loss should be applied in its entirety to the reduction of that portion of the net income of the consolidated group earned after termination of federal control or earned by affiliates not under federal control.

The Colorado & Southern contends that since under Section 230, supra, income of railroads under federal control is taxed at 8 per cent and of other corporations at 10 per cent, of necessity income and losses of railroads under federal control and income and losses of railroads not under federal control must be dealt with separately and without admixture of the losses of one class with the income of the other, so that each rate shall be applied respectively and separately to the particular net income on which the statute levies the tax.

We are unable to agree with this contention. Section 240(a) of the Revenue Act of 1918, 40 Stat. 1081, provides that affiliated corporations under regulations to be prescribed by the Commissioner shall make a consolidated return of net income and invested capital, that the tax shall be computed and determined upon the basis of such return, and that where a tax is as- sessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or in the absence of any such agreement then on the basis of the net income properly assignable to each.

Congress required consolidated returns by affiliated corporations in order that the tax should be levied on the true net income resulting from a single business enterprise although conducted by means of more than one corporation.[2] The aggregate loss of members of an affiliated group must be deducted from the aggregate profit of members in the group, if the true net income resulting from such single business enterprise is to be ascertained.[3] The loss of any such member is a loss of the group.[4]

It follows that ordinarily the true net income of the Colorado & Southern and its affiliates for the year 1920 would be ascertained by deducting from the aggregate of the annual income of the affiliates that had an income, the aggregate losses of the affiliates that had a loss.

Do provisions of Section 230 of the Revenue Act of 1918, supra, and the Federal Railroad Control Act, 40 Stat. 451,[5] require the application of a different method here?

We are of the opinion that they do not. In Southern Railway Company v. Commissioner, 4 Cir., 80 F.2d 884, 886, the court said:

imposes a tax of 10 per cent. on the railroad's income, of which 2 per cent. is normal tax and 8 per cent. is war tax; and the Federal Railroad Control Act provides that the 2 per cent. normal tax shall be apportioned between the railroad and the director in accordance with the period of the year falling under federal control, whereas the whole of the 8 per cent. tax shall be borne by the railroad. Apportioning the 2 per cent. tax between the director and the railroad on this basis and imposing the 8 per cent. tax on the railroad alone is the same as imposing 8 per cent. on 60/366 of the net income for the year and 10 per cent. on the remainder, as 60/366 of the year was the portion of federal control. There is, of course, no difference between relieving the road of the 2 per cent. rate during 60/366 of the year, and relieving it of 60/366 of the tax computed at that rate for the entire period."

[2] Burnet v. Aluminum Goods Company, 287 U.S. 544, 547, 53 S.Ct. 227, 77 L. Ed. 484; Handy & Harman v. Burnet, 284 U.S. 136, 140, 52 S.Ct. 51, 76 L.Ed. 207; Atlantic City Electric Co. v. Commissioner, 288 U.S. 152, 53 S.Ct. 383, 77 L.Ed. 667.

[3] Ilfeld Co. v. Hernandez, 292 U.S. 62, 69, 54 S.Ct. 596, 78 L.Ed. 1127.

[4] McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 55 S.Ct. 219, 79 L.Ed. 423; Burnet v. Aluminum Goods Company, supra; Ilfeld Co. v. Hernandez, supra.

[5] The Federal Railroad Control Act provides that when federal control ends during the tax year, the taxes for such year shall be apportioned to the date of the ending of such federal control.

"It is well settled that the tax imposed by the federal statute is on the annual income (Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383); and there is no authority in the statute or elsewhere for attributing any particular portion of the tax levied on annual income to any particular portion of the income. The language of the statute is clear that it is the tax and not the income which is to be apportioned; and when this is grasped, it is readily seen that the calendar basis, admittedly applied in the case of other taxes, is the only basis of apportionment possible."

■ Net income is computed on an annual basis.[6] The group was affiliated during the entire year of 1920. Annual income or loss cannot be allocated to particular periods of a year. Hence, the twelve months' loss for 1920 of the affiliate, not under federal control, cannot be deducted from the carriers' income for the ten months in 1920 that they were not under federal control. Rather it must be deducted from the aggregate annual income of the affiliates that had income in order to reflect the true annual net income of the group.

Section 240(a) of the Revenue Act of 1918, in part provides:

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. * * *"

Literal compliance with this provision cannot be had because the rate of tax as to the members of the group under federal control is 8 per cent during 60/366ths of the year and 10 per cent during the remainder of the year, and the rate of tax as to the members of the group not under federal control is 10 per cent for the entire year, and an apportionment of the tax as to the members under federal control is necessary. While the statute provides for a computation of the total tax and an assessment upon the respective affiliates in such proportions as may be agreed upon, or absent agreement, on the

basis of the income properly assignable to each, the same result is attained if the taxable net income is apportioned to the several members of the group and the tax of each separately computed. If the taxable net income is thus assigned, and the tax of each affiliate separately computed, apportionment as to members subject to a different rate of tax during the year may be effected.

■ Admittedly, an assignment of taxable net income rather than tax departs from the strict letter of the statute, but the departure is nonsubstantial since the same result is attained, and we think it is justified in cases requiring apportionment.

■ Manifestly, one member of the group should not be permitted to deduct the whole of its annual loss from a fractional portion of the annual income of another member of the group where that fraction is taxed at a higher rate than the remaining fraction. If the income is to be apportioned the loss should be likewise apportioned. The only alternative to the method we have indicated for the ascertainment of the taxable net income and the assignment of the tax would be for the members of the affiliated group not under federal control to file a return covering the first 60 days of the year, the members of the group under federal control to file a return covering the first 60 days of the year, and the affiliated group to file a consolidated return covering the last 306 days of the year, and to embrace in each return the earnings actually received and the losses actually suffered in the respective periods, or to allocate them proportionately. This would be a radical departure from the settled practice of requiring profits and losses to be accounted for on an annual basis and would not comply with the mandatory requirement of Section 240(a) of the Revenue Act of 1918 that affiliated corporations shall make a consolidated return of net income and invested capital.

■ We conclude that the loss here in question should be deducted from the total income of the group for the twelve months' period; that a proper portion of the taxable net income so arrived at should be assigned to the Colorado & Southern; that 60/366ths of that income should be

6 Woolford Realty Co. v. Rose, 286 U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128;. Helvering v. Morgan's, Inc., 293 U.S. 121, 127, 55 S.Ct. 60, 79 L.Ed. 232.

taxed at 8 per cent and the remainder at 10 per cent.

Reversed and remanded with instructions to recompute the tax in accordance with the views herein expressed.

Reversed and remanded.