M. PAUL DECOTEAU *vs.* JOSEPH J. DELISO.

Hampden.    September 21, 1944. — November 27, 1944.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Broker,* Commission.    *Contract,* Performance and breach, Personal services.

Even if a defendant had agreed with the plaintiff that, in the event that the defendant acquired control of the stock of a certain corporation operating a factory, he would pay the plaintiff a commission for having informed him of the existence of the factory and for having furnished him with data concerning the corporation and with a list of its stockholders, the plaintiff was not entitled to such commission where, although the defendant and his brother were elected the corporation's president and treasurer, respectively, because "the other stockholders voted along with him," he was not shown to have acquired more than thirteen thousand out of its forty-five thousand outstanding shares of stock.

CONTRACT. Writ in the Superior Court dated May 27, 1941.

At a trial before *Hammond,* J., a verdict for the defendant was ordered, and the plaintiff alleged exceptions.

In this court the case was submitted on briefs.

*W. J. Granfield, G. H. Madsen, & M. G. Kane,* for the plaintiff.

*R.. T. King,* for the defendant.

SPALDING, J. The plaintiff seeks to recover a commission to which he claims to be entitled by reason of certain services rendered to the defendant. The only question for decision is the correctness of the judge's action in directing a verdict for the defendant.

The jury could have found the following facts: The defendant, an engineer and contractor, in June or July, 1940, informed one Murray, a Springfield attorney, that he was looking for some run-down factories "available for a small amount of money." Early in August Murray arranged for a meeting between the plaintiff and the defendant, at which the plaintiff told the defendant that he knew of a manufacturing plant within sixty miles of Springfield that could be acquired for a fraction of its real value. After describing the factory in some detail the plaintiff said, "It is not a question of me selling you the plant, it is a question of me selling you, or making it possible for you to pick up stock control of this company." The plaintiff informed the defendant that the factory he referred to was operated by Stevens Walden Inc. of Worcester (hereinafter called the company) and that he had a list of its stockholders. He further stated that the stock control of the company could be "picked up" for less than $125,000, that the buyer would have to pay a commission, and that the regular commission on the sale of a going business was ten per cent. The defendant said that "if the plant was as good as the plaintiff told him it was and something he could use 'and pick up control' of the stock he would pay the plaintiff a commission on the basis of $200,000."

The defendant met the plaintiff a few days later and told him that he had seen the factory and was very much inter-

ested, and desired to know how he could acquire control. The plaintiff said that control of the stock could be obtained through one Wells or by the defendant himself, and that if Wells were employed for that purpose the defendant would have to pay him (Wells) for his services. The defendant stated that he was willing to employ Wells, who was then sent for and joined the conference. The plaintiff gave to the defendant certain data about the company, including a list of its stockholders.

Shortly thereafter a third conference was held at which the plaintiff, the defendant, Wells, Murray and Fenton (Wells's attorney) were present. Wells and the defendant entered into a contract by which Wells was to be paid for his services and expenses, and thereafter the plaintiff "had nothing more to do with the transaction."

There was no evidence that the defendant ever acquired control of the company's stock. There was evidence that, of the forty-five thousand shares of voting stock outstanding, the most that the defendant ever acquired or controlled was twelve thousand or thirteen thousand shares which he personally purchased. Subsequently the defendant and his brother were elected president and treasurer, respectively, of the company.

Viewing the case on the merits, without regard to the pleadings, we think the judge was right in directing a verdict for the defendant. If we assume in favor of the plaintiff that the commission would have been earned if the control of the company's stock had been acquired either through the efforts of Wells or through those of the defendant and that the plaintiff had nothing further to do after supplying the original information, nevertheless he was not entitled to go to the jury for the reason that the defendant never obtained control.

The plaintiff has argued that he is entitled to the commission because the defendant in reality obtained control of the company as evidenced by the fact that he and his brother were elected president and treasurer respectively. We do not agree. The only evidence as to how this was accomplished was the testimony of the defendant that "the other

stockholders voted along with him." Control resting on nothing more than the acquiescence of other stockholders was not what was contemplated by the agreement. See *Handy & Harman* v. *Burnet*, 284 U. S. 136, 141.

*Exceptions overruled.*