*1178 OPINION.
Sternhagen:
1. The principal question in issue is whether the petitioner was entitled to include the Henry Waterhouse Trust Co., *1179 Ltd., in its consolidated return under the Revenue Acts of 1928 and 1932, sec. 141. This it was entitled to do if the Waterhouse Co. was within the affiliated group as defined in subdivision (d).[1] The petitioner included the Waterhouse Co. as a party to its consolidated return, and the Commissioner ruled against the affiliation in' the following language:
The question of affiliation was considered again and the revenue agent was sustained in the disallowance of the loss of the Henry Waterhouse Trust Company, Limited, for the period February 15, 1931, to December 31, 1931, as a deduction in the computation of the consolidated net income for the reason that the companies are held to be not affiliated; also for the further reason that the loss was sustained prior to the period February 15, 1931, to December 31, 1931. The facts in your case show that the Henry Waterhouse Trust Company, Limited, was hopelessly insolvent at the time the stock of that corporation was turned over to you, and was held only for the purpose of liquidation; therefore, you and the Henry Waterhouse Trust Company, Limited, are held to be not affiliated during the period February 15, 1931, to December 31, 1931.
The “further reason” is now disavowed by the respondent and it is stipulated that the loss was sustained after February 14, 1931.
The petitioner claims that on February 14, 1931, it acquired all of the Waterhouse stock in fact and in law and continued to own it thereafter until the merger at the close of 1933; that this is squarely within the language of the statute defining an affiliated group; and that it is therefore entitled to file a consolidated return covering that corporation. The respondent does not dispute that petitioner was the record owner of the shares.after February 14,1931, but for various reasons disputes the application of the statute.
The evidence provides in detail the history and circumstances of the transactions, all of which were described by credible witnesses. It is free from doubt, and there has been none to resolve in making the findings. That all the Waterhouse shares were owned directly by petitioner is a fact indubitable in the record and is therefore categorically found. If the statute means what it says, the finding decides the case.
The respondent asserts that the shares were acquired by petitioner without cost and therefore not by purchase; that in reality petitioner did not own them, but only held the formal legal title as a means of achieving liquidation for the equitable owners, among whom were *1180 the contributors to the $400,000 loan, who, rather than petitioner, controlled the situation; that petitioner was a sort of trustee or agent; and there is a suggestion that the whole plan was factitious and shaped artificially to enable petitioner to reduce its taxes. The argument is hard to follow. Most of it is beside the point.
Affiliation is purely a statutory matter, and it must be administered with a close adherence to the statutory language. Ownership and control of the shares mean juristic and not practical or economic ownership and control, Handy & Harmon v. Burnet, 284 U. S. 136; United States v. Cleveland, P. & E. R. R. Co., 42 Fed. (2d) 413; Marbelite Corporation of America, Ltd. v. Commissioner, 77 Fed. (2d) 713; and are equally effective when the subsidiary corporation is being liquidated, Burnet v. Aluminum Goods Manufacturing Co., 287 U. S. 544; Pittsburgh & West Virginia Railway Co., 32 B. T. A. 66; or is commercially unsuccessful, Woolford Realty Co. v. Rose, 286 U. S. 319; or inactive, Utica Knitting Co. v. United States, 68 Ct. Cls. 77; Sprague-Sells Corporation, 30 B. T. A. 1165; and when the subsidiary’s shares are under pledge, Lavenstein Corporation v. Commissioner, 25 Fed. (2d) 375; or its properties leased for a long term, United States v. Cleveland, P. & E. R. R. Co., supra.[2]
The evidence gives no ground for finding á trust, or an agency, or that petitioner’s acquisition was not by purchase, or that its ownership was qualified or partial, or that liquidation was the sole or primary purpose of the acquisition, or that tax reduction was a motive. Hence it is unnecessary to consider a construction of the statute to apply to such situations. There was no acquisition of a subsidiary for the sake of its prior net losses within the condemnation of the Woolford Realty decision. The clear implication of that decision is that the losses of one affiliate are available to offset taxable net income of another if sustained during the period of affiliation— which is the situation here. Gregory v. Helvering, 293 U. S. 465, is wholly inapplicable unless it is to be read as disapproving any construction of a statutory term like reorganization or affiliation which recognizes a lower tax. That case revealed a sham, and the Court disregarded the mask and dealt with realities; but, as in Helvering v. Minnesota Tea Co., 296 U. S. 378, it can here be said, “The present record discloses no such situation; nothing suggests other than a bona fide business move.”
The Commissioner’s determination denying affiliation was in error.
2. The petitioner deducted the contributions made in 1932 and 1933 to the Hawaii Bureau of Governmental Research. The deductions were held by the Commissioner not to be allowable, and the *1181 petitioner argues that they are ordinary and necessary expenses of carrying on its business. In order to succeed in this contention, the evidence must support a finding that the contributions were made to promote the petitioner’s business and that they could be reasonably expected to result directly in a business benefit. Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289; Helvering v. Evening Star Newspaper Co., 78 Fed. (2d) 604; certiorari denied, 296 U. S. 628; Merchants National Bank of Mobile v. Commissioner, 90 Fed. (2d) 223. Such a finding can not, however, be made from the evidence. The question is not whether the Bureau of Governmental Research is such an organization as is exempt from tax or contributions to which by individuals are deductible as donations. Whether it is such an organization need not, therefore be decided. The question is whether the petitioner’s contributions are made for the sake of benefits to be derived, whether such benefits may reasonably be expected to result, and, if so, whether the result is direct. A general benefit to the community as a whole does not support the deduction. Merchants National Bank of Mobile v. Commissioner, supra. That kind of benefit is the most that can be inferred from the present record, and the respondent’s determination is therefore sustained.

Judgment will be entered under Rule 50.

 (d) Definition of “Affiliated Group.”—As used in this section ant “affiliated group” means one or more chains of corporations connected through stock ownership with a common parent corporation if—
(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations ; and
(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations.
As used in this subsection the term “stock” does not include nonvoting stock which is limited and preferred as to dividends.

 See Law of Federal Income Taxation, Paul and Mertens, vol. 4, ch. 38, VI § 38.73 et seq.